ANNE CONNORS, as Administratrix of MARY ANN CON-
NORS, Deceased, Plaintiff, v. THE MAYOR, Etc., OF THE
CITY OF NEW YORK and others, Defendants.

*Removal of dangerous buildings in New York — department of buildings — chap. 625
of 1871; chap. 547 of 1874.*

The duty of examining and removing dangerous buildings and structures in the
city of New York is wholly vested in the department of buildings, and the
officers and agents thereof are not the agents of the city, and the city is not
responsible for their acts or omissions.
*Maxmilian v. The Mayor* (62 N. Y., 160) followed.

Motion by the plaintiff for a new trial, on exceptions ordered
to be heard in the first instance at the General Term after an order
dismissing the complaint. The action was brought against the city
of New York, James M. Shaw, the owner of a building, and
Amos N. Titus, a contractor, who, it was alleged, had agreed to
take down the wall thereof, the fall of which gave rise to this cause
of action, and had wrongfully neglected to take the same down.

*Daniel P. Lyddy*, for the plaintiff.

*D. J. Dean*, for the defendants.

Brady, J.:
The complaint herein sets forth that in 1875, a building belong-
ing to James M. Shaw, situate on his lands known as 25 Duane
street, in the city of New York, was so injured by fire that the walls
thereof became unsafe to the knowledge of the defendants; that
they permitted them to remain thus standing until one of them fell
and so injured the plaintiff's intestate that she died. The answer
contains a denial of knowledge or information sufficient to form a
belief of all the material facts.

Upon the trial the complaint was dismissed on the ground that no
cause of action was contained therein against the defendant, the
City. The ruling of the learned justice presiding was based upon
the case of *Maxmilian v. The Mayor* (62 N. Y. Rep., 160). It

appears, upon proper investigation, that the duty of examining and removing, if necessary, any and all structures, or parts of structures forming parts of buildings, when dangerous, devolves upon the department of buildings, which was created by special statutes, providing in detail not only for the manner in which buildings shall be constructed, but also for the way in which they shall be removed, taken down, or parts thereof removed or taken down, under the direction and at the instance of the department mentioned. (Chap. 625, Laws 1871; chap. 547, Laws 1874.) These acts also vest large discretionary power in the superintendent of the department, and authorize him to modify or vary any of the several provisions to meet the requirements of special cases, on presentation of the facts by petition to this court, and on obtaining a certificate thereupon that he is empowered to exercise such discretion.

The powers conferred upon the department are in many respects indeed *quasi* judicial and the machinery of the law is put summarily in motion when the department acting under the laws call for its application. (Sections 31, 33, 36, 37, 38, 39, chapter 625, Laws 1871.) The defendants have no authority over the department in the exercise of the powers conferred, and are without supervisory control. They appoint the superintendent, and they pay the expenses of the department, which was created, not for the immediate benefit of the municipality, but as a means to the exercise of the sovereign power for the benefit of all citizens. The officers are not the agents or servants of the corporation, therefore, but are public agents or servants of the public at large, and the corporation is not responsible for their acts or omissions, nor for the acts or omissions of the subordinates appointed by them. In stating these legal propositions we are repeating what was said in the Maxmilian case (*supra*), and they seem to meet the exigencies of this case exactly. If the defendants were not thus relieved of the duty of guarding the public from the danger of permitting unsafe walls to remain standing a different conclusion must have been expressed; but they have been relieved, and the whole subject transferred to a special department with duties prescribed and imposed, and it is supposed to the greater advantage and greater security of the citizen. The defendants by making the selection of the officer who is to preside over the department, and by paying the expenses entailed by its

existence, do all the duties they are called upon to perform except to remove the superintendent when proper charges are made.

The department must, in other words, do what the defendants would have been required to do, had not the sovereign power created it, imposing upon it the necessary obligations and conferring upon it the necessary authority to make it effective. We think the case of Maxmilian, *supra,* and this parallel, therefore, and that this is to be governed by the same rules which were declared in that case.

We cannot perceive any distinction between them in principle. They are, as already suggested, parallel. Whether the plaintiff have any and what remedy, we are not called upon here to decide. It rarely happens, however, that our laws are inadequate to furnish redress for wrongs done.

The judgment should be affirmed.

DAVIS, P. J., concurred.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

Judgment affirmed.